IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULIA BARBARA COSBY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF WATONGA, OKLAHOMA, | ) **Case No.**  CIV-21-785-PRW |
| FORMER WATONGA POLICE CHIEF | ) |
| WILLIAM SHAWN KAYS, | ) |
| ANITRA HARPER, | ) |
| BRIAN JOHNSON, | ) **JURY TRIAL DEMANDED** |
| MATTHEW HOLLON, | ) |
| JONATHAN DEJESUS, | ) |
| RICK GARCIA, | ) |
| MICHELLE SINGH, | ) |
| RYAN GIBSON, | ) |
| ALANA BURKS, | ) |
| AL HARPER, | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff Julia Cosby, by her attorney Joseph Norwood, complains of Defendants City of Watonga, Oklahoma, former Watonga Police Chief Shawn Kays, Watonga Police Department employee Anitra Harper, Watonga Police Officer Brian Johnson, Watonga Police Officer Matthew Hollon, Watonga Police Officer Jonathan Jesus, Watonga Police Officer Rick Garcia, Watonga Police Officer Michelle Singh, Watonga Police Officer Ryan Gibson, Alana Burks and Al Harper; as follows:

### Introduction

1.  Plaintiff Julia Cosby was stalked, harassed, kidnapped, assaulted and battered by then Chief of Police Shawn Kays and other officers and employees of the City of Watonga and the Watonga

Police Department seeking to drive Ms. Cosby from her residence in Watonga, Oklahoma and from the city completely.

2. Ms. Cosby committed no crime or any other act that would warrant the illegal and unconstitutional conduct by the Defendants. Ms. Cosby's only aim was to reside in her lawful residence and keep possession of her belongings. For that her corrupt landlords and the Watonga Police Department conspired to violate her rights by physically assaulting her and depriving her of her residence and belongings.

3. Ms. Cosby found herself in a dispute with her landlord in Watonga, Oklahoma. The landlord used their relationship with employees of the City of Watonga and the Watonga Police Department, particularly the named Defendants, to illegally remove Ms. Crosby from her residence.

4. During the course of the Defendants illegally removing Ms. Crosby from her residence the Defendants assaulted, battered, kidnapped and generally harassed Plaintiff Cosby.

5. Upon information and belief, the Defendant Shawn Kays and the rest of the Defendants have been terminated from their employment with the City of Watonga due to the subject incident and Defendant Shawn Kays has been criminally charged.

**Jurisdiction and Venue**

6. This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

7. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district, the majority of the Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

**Parties**

9. Plaintiff Julia Cosby is a 45-year-old female born and raised in Germany and is a permanent resident of the United States living in the Western District of Oklahoma.

10. Defendant Michelle Sign was a police officer with the City of Watonga and the at all times mentioned herein and the wife of Defendant Shawn Kays.

11. Defendant Jonathan DeJesus was an officer with the Watonga Police Department at all times mentioned herein and was Defendant Shawn Kays best friend for many years, and they worked together in law enforcement in and around Lawton, Oklahoma.  Defendant DeJesus was present during the events described herein.

12. Defendant Ryan Gibson was a police officer with the City of Watonga during all events described herein and was present during the events described herein.

13. Defendant William Shawn Kays was the Chief of Police for all transactions and occurrences which are plead below.

14. Defendant Anitra Harper was the office manager for the Watonga Police Department and was present at the incidents described below. Defendant Anitra Harper is a key connection between the Defendant-landlords-for-Plaintiff who were attempting to evict Plaintiff and the Watonga Police Department as she is the sister of Plaintiff's landlord, Defendant Alana Burks.  Upon information and belief Anitra Harper was engaged in an intimate relationship with Defendant Kays and had extensive business dealings with Defendant Kays during the time of the incidents described herein.

15. Defendant Brian Johnson was a police officer with the City of Watonga during all events described herein and was present during the events described herein.

16. Defendant Matthew Hollon was a police officer with the City of Watonga during all events described herein and was present during the events described herein.

17. Defendant Rick Garcia was a police officer with the City of Watonga during all events described herein and was present during the events described herein.

18. Defendant City of Watonga, Oklahoma is a municipality within the State of Oklahoma and the employer of several Defendants.

19. Defendant Alana Burks was Plaintiff's landlord at the time of the incidents described herein and sister of Watonga Police Department employee Defendant Anitra Harper.

20. Defendant Al Harper was Plaintiff's landlord at the time of the incidents described herein and father to Watonga Police Department employee Defendant Anitra Harper.

**Operative Facts**

21. Plaintiff Julia Cosby moved to Watonga, Oklahoma at the end of March, 2019 and two weeks later moved into 520 N. Montgomery St. in Watonga with Wilbur Eugene Randle. Plaintiff's landlords there were Defendants Al Harper and Alana Burks.

22. Shortly after Plaintiff moved into the residence, her roommate, Wilbur Eugene Randle, began to verbally and physically assault her.

23. On July 1st, 2019, Wilbur Eugene Randle was arrested by former Watonga Police Officer Defendant Briston Lowry at Mr. Randle's mother's (Trudie Randle) house down the street from the 520 N. Montgomery residence.

24. Plaintiff fled to Trudie Randle's house for safety and Trudie Randle had called the police because Plaintiff Cosby refused to leave Trudie's unlocked bathroom, because Plaintiff was

terrified that Mr. Randle was going to kill her, as Mr. Randle had just viciously assaulted and put a loaded firearm to Plaintiff's head.

25. After the incident Plaintiff was transported to Mercy Hospital in Watonga via ambulance for her injuries. Wilbur Eugene Randle was charged with domestic assault and battery.

26. Mr. Randle posted bail and moved in with his mother down the street from Plaintiff at the 520 N. Montgomery residence.

27. Plaintiff's landlord at the 520 N. Montgomery residence was Defendant Alana Burks and Defendant Al Harper.

28. Upon information and belief, and unknown to Plaintiff at the time, the Burks and Randles were acquainted, and the Burks began assisting the Randles in harassing Plaintiff.

29. Not long after the harassment by the Burks and Randels began the electricity at the 520 N. Montgomery residence was turned off. This was sometime in the middle of July, in the most intense time for heat, Plaintiff's air conditioning was shut off.

30. Defendant Alana Burk's sister is Defendant Anitra Harper who was an employee of the Watonga Police Department. Her position, which was somewhat of an office manager, allowed her access to all records within the Watonga Police Department and she was given deference from the Police Chief Defendant Kays, due to her business and personal relationship with Kays, which gave her authority over Watonga Police personnel.

31. Defendant Anitra Harper used her position within the Watonga Police Department to assist her sister Defendant Alana Burk to remove Plaintiff from her residence at the Montgomery St. address.

32. On July 14th, 2019 in the afternoon there was a knock on Plaintiff's door, followed by a key turning in the lock and unlocking the door and Watonga Police Department Officer Defendant

Brian Johnson opened the door. Defendant Johnson was in uniform with his hand on the key in the door lock, Latrice Randle, Wilbur Eugene Randle's sister, was at the door with Defendant Officer Johnson and both entered Plaintiff's residence without Plaintiff's consent, with Plaintiff's abuser Wilbur Eugene Randle standing on the porch looking inside at Plaintiff.

33. Defendant Brian Johnson walked inside and started hovering over Plaintiff yelling at Plaintiff and demanding that she needs to leave her residence immediately, that she is there illegally and that Plaintiff's abuser Mr. Randle has the sole right to live and be at the residence.

34. Latrice Randle screamed at the top of her lungs profanities and threats at Plaintiff, while Officer Johnson was berating Plaintiff for about 10-15 minutes inside Plaintiff's living room, using his uniform as an intimation tool to effect an illegal eviction.

35. Later that same evening of July 14th, 2019 a loud forceful repeated banging on the door came, coupled with loud shouts "police open the door". Plaintiff was fearful the door was going to be knocked open she reluctantly came to the door and unlocked and cracked open the door.

36. The door was immediately kicked open and a booted foot positioned at the bottom of the door to keep it open. Watonga Police Chief Defendant Shawn Kays stepped inside the door to prevent Plaintiff from closing the front door and began hovering over Plaintiff and began to shout at Plaintiff.

37. Upon information and belief other Defendant Watonga Police Officers were present with Chief Kays.

38. Chief Kays shouted he was there to serve an eviction notice and that it would be best for Plaintiff, if she were to vacate the premises immediately. Defendant Kays had a piece of paper that he placed inside of Plaintiffs entry way on a cabinet countertop, thus fully entering

Plaintiffs residence and using his body and uniform adorned with tactical body armor vest to physically intimate Plaintiff.

39. The eviction notice document was not legal, had no legal effect and was fabricated by Defendant Chief Kays to achieve the aims of his friends the Burks and his fellow Watonga Police colleagues.

40. Kays then violently kicked the door wide open, positioning his body partially inside Plaintiff's residence, threatening Plaintiff that it would be in her best interest to do exactly as he says as he placed the fake eviction notice on the countertop.

41. Two days after Chief Kays pushed himself in Plaintiff's residence Plaintiff's electricity was illegally shut off by Defendant's and their influence with the City of Watonga. The trailer turned into a literal oven with temperatures reaching 120/130+ inside and Plaintiff couldn't stay inside and had to find somewhere to go. Plaintiff was forced to sleep in whoever's residence was kind enough to take her in.

42. On July 23rd, 2019 Plainitiff was in her Montgomery St. residence going through her clothes to collect them when there was a knock around 10:00 o'clock in the morning on her door. It was Watonga Police Officer Defendant DeJusus and other named Defendant Watonga Officers.

43. They forcefully placed Plaintiff in handcuffs and transported her to Blaine County jail where she found out her arrest was for a bench warrant for an unpaid speeding ticket out of Kingfisher County, Oklahoma.

44. Plaintiff was processed, jailed before being transported to Kingfisher County and processed in and escorted to the court clerk's office in Kingfisher County to make payment arrangements

and released.  Plaintiff found a ride back to Watonga and was back at her Montgomery St. residence by evening.

45. Once back at her residence on July 23rd, 2019 Plaintiff's landlords saw her unlocking her front door and was surprised, and yelled at Plaintiff that she had no right to be in her residence, because Plaintiff's abuser, Wilbur Randle had moved back in.

46. Defendant Alana Burks, her sister Defendant Anitra Harper, their father Defendant Al Harper, and Plaintiff's abuser Wilbur Eugene Randle and some other people Plaintiff does not know showed up at her residence. Plaintiff was called names and screamed at by the sister Defendants Alana Burks and Anitra Harper repeatedly, all those people illegally entered Plaintiff's residence again with a key.

47. Watonga Police Officer Defendant Garcia showed up and illegally entered Plaintiff's residence because Defendant Antira Harper had called her close associate and boss Chief Defendant Kays again.

48. Watonga Officer Defendant Rick Garcia demanded Plaintiff leave her residence within one hour and never return based on the ineffectual eviction notice and Defendant landlord's and her families demand to illegally throw Plaintiff on the streets, so Plaintiff's abuser can live there.

49. Officer Garcia harassing Plaintiff, never listening to her and helping other Defendants to terrorize Plaintiff.

50. Plaintiff wasn't allowed to go through her belongings that the Defendant landlord's and Plaintiff's abuser Wilbur Randle had stuffed in trash bags while she was briefly jailed in Kingfisher County.

51. Eventually they all left and Defendant Officer Garcia and all the other Defendant Officer's that had amassed outside did as well.

52. Less than forty-five minutes later, Defendant Officer Garcia returned and not by himself.

53. Plaintiff was sitting on her living room floor trying to sort through the trash bags full of her belongings, sobbing from the torment she had suffered when the Watonga Police entered her residence again.

54. Watonga Police Officer Defendant Rick Garcia came into the bathroom telling Plaintiff to leave her residence and then Chief Kays came in the bathroom with other officers behind him.

55. Kays called Plaintiff a "bitch" and told Plainitiff to "get the #$%& out now." The Watonga Police Defendant's were in Plaintiff's bathroom and just outside when they tried to snatch plaintiff's cell phone from her.

56. Defendant Chief Kays was then holding a nugget of marijuana in Plaintiff's face claiming it was Plaintiff's and he was going to arrest Plaintiff for it. Plainitiff told Kays it was not hers and that it must be his and that he brought it inside her residence to set her up.

57. Defendant Kays replied "I am Chief of Police and can do whatever the fuck I want" followed by pushing Plaintiff and stating "@#%$ you bitch".

58. Defendant Kays violently grabbed Plaintiff and dragged her with help of the other Defendant Watonga Police Officers down the hallway and told Plaintiff to grab what she can and then Defendant Kays and the other Defendant Watonga Officers dragged Plainitiff outside her residence and told her to leave the area.

59. All the while this was ongoing on Plaintiff's Defendant landlord Alana Burks had their handyman change the door lock.

60. Plaintiff was walked away from the residence and Defendant Kays did not allow Plaintiff to grab anything else, only what she could carry. Kays pushed Plaintiff while she was walking down the stairs and kept pushing Plaintiff off her residence property. It was already getting dark outside as Plaintiff was forced to walk outside of the city limits.

61. Upon information and belief the individual Defendants sent people after Plaintiff in an attempt to have her beaten and robbed. The suspect people kept creeping closer and closer to Plainitiff in the dark and ultimately backed off when Plaintiff pulled her knives in order to defend herself.

62. That night Plaintiff spent outside, nowhere to go, her life in danger.

63. The next day Plaintiff managed to find shelter for a few days, but it was with someone that she hardly knows and ultimately had bad intentions, so Plaintiff had to flee again.

64. The next few weeks Plaintiff stayed with whoever would give her shelter, many times the people were dangerous.

65. On or about August 13th, 2019 in the morning Plaintiff walked to the residence of Alana Burks' handyman because Plaintiff had learned that he had her belongings at his old residence. Plaintiff wanted to retrieve her property. The handyman let Plaintiff in and informed her that her belongings were at his old residence and he would need to retrieve them for her.

66. The handyman left to get Plaintiff's belongings and Plaintiff waited at his residence for him to return with her belongings.

67. After quit sometime of Plaintiff waiting for the handyman to return with her belongings, Defendant Chief Kays showed up with his wife Watonga Officer Defendant Michelle Singh and other Defendant Officers.

68. Defendant Kays was not in uniform and accused Plaintiff of burglary, Plaintiff was standing by the back door looking for the handyman when someone screamed "that's her".

69. Plaintiff told Kays she was not a burglar and that she was invited by the current tenant.

70. Defendant Kays entered the house through the open backdoor with Defendant Michelle Kays and the other Defendant Officers and started to assault Plaintiff in the kitchen.

71. Defendant Kays put his hands repeatedly on Plaintiff's neck from behind, squeezing it and shoving her, while Defendant Singh and the other Defendant Officers kept grabbing Plaintiff.

72. Kays called Plaintiff names and grabbed her neck again and had both Defendant Singh and Defendant Officer Gibson put their hands on Plaintiff again.

73. Plaintiff moved away from them when Defendant Kays grabbed and threw Plaintiff outside on the concrete. Defendant Kays brutally threw Plaintiff down, while trying to yank her shoulder out of the socket and Defendant Singh sat on Plaintiff' thighs and handcuffed Plaintiff so tight it cut deep into Plaintiff's wrists.

74. Defendant Officer Gibson helped Kays throw Plaintiff. Defendant Kays punched Plaintiff while they detained Plaintiff, and he sat on her back and twisted her handcuffed right arm, until it dislocated Plaintiff' elbow and shoulder. Plaintiff's face hit the concrete hard during the assault and someone kicked her left hip a few times. All three assaulted Plaintiff. After the assault took place they violently shoved Plaintiff in Defendant Michelle Singh's police cruiser and locked Plaintiff in the back, all the while pinching and squeezing Plaintiff' severely injured arm repeatedly causing injury to Plaintiff.

75. Defendant Michele Singh starts driving off with Plaintiff, kidnapping Plaintiff and keeps driving down a country road, outside of the city limits of Watonga, stops and gets out of her cruiser, walks away from it to make a phone call, she was on the phone for a few minutes. Defendant Singh made the call after Plaintiff told her that if they kill Plaintiff that all Plaintiff's fingerprints, DNA, dental, etc is on file with the FBI, USCIS etc. because of Plaintiff's

permanent resident status and that the German embassy has been told that if Plaintiff vanishes, that the Watonga Police did it.

76. Defendant Michelle Singh finished her phone call after a few minutes and gets back in her cruiser, when Plaintiff asks her again where they are going. Defendant Singh says to Mercy Hospital in Watonga.

77. Defendant Singh then drives back within city limits of Watonga and to the Hospital back entrance where the Defendant Officer Gibson is waiting. They drag Plaintiff out and brutally squeezed her badly injured arm non-stop.

78. Defendants Singh and Gibson dragged Plaintiff into a side or back entrance and into a basement hospital room, where Plaintiff was greeted by staff of Mercy Hospital and Defendant Kays with other Defendant Watonga Officers. They all disregarded Plaintiff begging to stop brutally squeezing her injured arm, Plaintiff being handcuffed the entire time.

79. The entire time Plaintiff was never combative and her desperate pleas to stop what they were doing went completely disregarded and laughed at.

80. Once dragged into that basement hospital room, Plaintiff was forced on a hospital bed with brutal force by Watonga Police Kays, Singh and Gibson and hospital staff. They pushed Plaintiff down with force and grabbed her legs, spread them and strapped her legs down on each side and pulled the restraints hard, to inflict pain and humiliation.

81. All the while Defendant Singh and Gibson took turns to dig their fingers painfully in Plaintiff's still handcuffed injured arms. They then took the handcuffs off and viciously pulled Plaintiff's arms out and down while restraining her wrists to each side of the hospital bed, ensuring to cause maximum pain and damage to Plaintiff's injured arm, never letting off for hours.

82. The Defendant Watonga Officers ordered the hospital staff to place an IV in Plaintiff. The Defendant Officers drew so much blood that it made Plaintiff lightheaded and let the hose attached to the needle in Plaintiff's left arm in so her blood could flow on the floor and the Defendant Officers laughed.

83. The Defendant Officers and hospital staff, at the Defendant Officer's direction, took off Plaintiff's clothes and left her strapped to the hospital bed naked in open view for anyone to see.

84. The hospital staff then placed a catheter in Plaintiff.

85. None of this was with Plaintiff's consent.

86. Plaintiff was then injected with unknown substances against her will and at the direction of Defendant Kays and the other Defendant Officers, and Plaintiff lost consciousness.

87. Plaintiff came to hours later in the back of a police cruiser that was driven by Defendant Watonga Police Officer Briston Lowery. Upon information and belief, Defendant Kays had ordered that Plaintiff be taken to the Red Rock psychiatric hospital in Clinton, Oklahoma where she was admitted against Plaintiff's will and forced to stay for a week.

88. The staff at Red Rock took Plaintiff immediately to the ER at the Clinton hospital for her injuries.

89. Per Oklahoma law for an individual to be admitted to a psychiatric facility against their will an affidavit must be completed claiming the individual to be admitted is a threat to herself or others.

90. Upon information and belief an affidavit was falsified by Defendant Chief Kays and his subordinates at the Watonga Police Department that stated falsely that Plaintiff is a threat to herself and others.

91. Upon information and belief Defendant Kays and Defendant Harper were the only two individuals that had unfettered access to Watonga Police department records.

92. This unfettered access to records by Defendant Kays and Harper aided their illegal efforts against Plaintiff to have her illegally admitted to a psychiatric ward and to be able to cover up said illegal admission and other illegal and unconstitutional conduct.

93. Upon information and belief Defendant Shawn Kays was terminated from law enforcement positions previously in Oklahoma for mental unfitness and misconduct.

94. Defendant Kays mental unfitness and previous misconduct should have been known by those within the City of Watonga at the time Defendant Kays was hired as Chief of Police.

95. Upon information and belief Defendant Kays did not possess the training and experience required for the position of Chief of Police and the individuals making the hiring decision of Defendant Kays should have known that he was not experienced or qualified.

96. Upon information and belief there have been numerous incidents involving Defendant Kays that should have informed the leadership of the City of Watonga that Defendant Kays was unfit for the profession of policing, even more so the position of Chief of Police.

### Count I – 42 U.S.C § 1983
### Fourth Amendment Excessive Force
### Against Individual Watonga Police Defendants

97. In the manner described more fully above the individual Defendants Watonga Police Officers, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment used force against Plaintiff Julia Cosby was not objectively reasonable in light of the circumstances.

### Count II – 42 U.S.C § 1983
### Fourth Amendment Unconstitutional Seizure of Body
### Against Individual Watonga Police Defendants

98. In the manner described more fully above the individual Defendants Watonga Police Officers, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment acted intentionally in their unreasonable seizure of Plaintiff without probable cause.

## Count III – 42 U.S.C. § 1983
### Fourteenth Amendment Substantive Due Process
### Against Individual Watonga Police Defendants

99. In the manner described more fully above the individual Defendants Watonga Police Officers, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment use of force against Plaintiff Julia Cosby was not objectively reasonable in light of the circumstances.

## Count IV – 42 U.S.C. § 1983
### Deprivation of Property without Due Process
### Against Individual Watonga Police Defendants

100.   In the manner described more fully above the individual Defendants Watonga Police Officers, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment, deprived Plaintiff of her property right without requisite constitutional protections.

## Count V – 42 U.S.C. § 1983
### Deprivation of Liberty without Probable Cause
### Against Individual Watonga Police Defendants

101.   In the manner described more fully above the individual Defendants Watonga Police Officers, the individual Defendants, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment, used false

evidence that they had manufactured in order to accuse Plaintiff of criminal activity, illegally seized her property and had Plaintiff illegal incarcerated in Red Rock psychiatric facility and cause the deprivation of Plaintiff's liberty, without probable cause in violation of her rights secured by the Fourth and Fourteenth Amendments.

102.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

103.   As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great emotional and physical pain and suffering, and other grievous and continuing injuries and damages.

104.   The misconduct described in this Count by the Individual Defendant Watonga Officers was undertaken pursuant to the policy and practice of the Watonga Police Department, in the manner more fully described below in Count VI.

### Count VI – 42 U.S.C. § 1983
### Municipal Liability Against the City of Watonga

105.   As described more fully herein, the City of Watonga is itself liable for the violation of Plaintiff's constitutional rights. Plaintiff's injuries were caused by the policies, practices, and customs of the Watonga Police Department, in that employees and agents of the Watonga Police Department, including Defendants in particular, regularly fabricated false evidence implicating individuals Watonga Police dealt with in various illegal conduct or conduct that would warrant seizure or incarceration of those Watonga Police Dealt with, pursued profoundly flawed investigations, and otherwise violated due process in a similar manner to that alleged herein.

106.   The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the Watonga Police Department, were allowed to exist because municipal

policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the above-described widespread practices were allowed to flourish because the Watonga Police Department, and the City of Watonga, declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who withheld material evidence, fabricated false evidence and witness testimony, and wrongfully seize individuals and their property and use excessive force on individuals Watonga Police would interact with.

107.    The constitutional violations described in this Complaint were also undertaken pursuant to the policy and practices of the Watonga Police Department in that the constitutional violations were committed by and with the knowledge or approval of persons with final policymaking authority for City of Watonga and the Watonga Police Department.

108.    Watonga police officers who manufactured evidence and illegally seized persons and property and used excessive force against individuals such as Plaintiff had every reason to know that they enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline. In this way, this system proximately caused abuses, such as the misconduct at issue in this case.

109.    The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

110.    Defendant Kays, being Chief of Police was the final policy maker for law enforcement in the City of Watonga.

### Count VIII – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights
### Against Individual Watonga Police Defendants

111.    Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff of her liberty and property and use excessive force against Plaintiff by maliciously fabricating evidence that would be used to detain Plaintiff and seize her property.

112.    In the alternative, the Individual Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive her of her constitutional rights by maliciously causing Plaintiff's loss of liberty and property and for Plaintiff to suffer from excessive force.

113.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

114.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

115.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's rights.

116.    As a result of Defendants' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, physical injury, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

117.    The misconduct described in this Count by was undertaken pursuant to the policy and practice of the Watonga Police Department, in the manner more fully described in Count VI.

**Count IX – 42 U.S.C. § 1983**
**Failure to Intervene**
**Against Individual Watonga Police Defendants**

118.    During the constitutional violations described herein, one or more of the Defendants stood

by without intervening to prevent the violation of Plaintiff's constitutional rights, even though

they had the opportunity to do so.

119.    The misconduct described in this Count was objectively unreasonable and was undertaken

intentionally, with malice, with reckless indifference to the rights of others, and in total

disregard of Plaintiff's rights.

120.    As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's

constitutional rights, Plaintiff suffered loss of liberty, great emotional pain and suffering,

physical injury and other grievous and continuing injuries and damages.

121.    The misconduct described in this Count by Individual Defendants was undertaken pursuant

to the policy and practice of the Watonga Police Department, in the manner more fully

described below in Count VI.

**Count X – State Law Claim**
**Intentional Infliction of Emotional Distress**
**Against All Individual Defendants**

122.    In the manner described more fully above, Defendants engaged in extreme and outrageous

conduct.

123.    The Defendants either intended that their conduct would cause severe emotional distress

to Plaintiff or knew that there was a high probability that their conduct would cause severe

emotional distress to Plaintiff.

124.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

125.    As a proximate result of this misconduct, undertaken within the scope of Defendants' employment, Plaintiff suffered injuries, including but not limited to severe emotional distress.

## Count XII – State Law Claim
## Malicious Prosecution & Unlawful Detention
## Against All Individual Defendants

126.    Plaintiff brings claims under state law that would be supported by the above stated facts regarding the detention of Plaintiff at the Red Rock psychiatric facility including but not limited to malicious prosecution and kidnapping.

## Count XII – State Law Claim
## Respondeat Superior
## Against Defendant City of Watonga

127.    In committing the acts alleged in the preceding paragraphs, the Defendant Police Officers were members and agents of the Watonga Police Department acting at all relevant times within the scope of their employment.

128.    Defendant City of Watonga is liable as principal for all torts committed by its agents.

## Count XIII – State Law Claim
## Civil Conspiracy
## Against Individual Defendants

129.    As described more fully in the preceding paragraphs, each of the individual Defendants acting in concert with one another and other co-conspirators, known and unknown, conspired to accomplish an unlawful purpose by unlawful means.

130.   In furtherance of the conspiracy, the Defendants each committed overt acts and were otherwise willing participants in joint activity.

131.   The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

132.   As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including, but not limited to, physical injury and emotional distress.

**Count XIV – State Law Claim
Indemnification
Against Defendant City of Watonga**

133.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

134.   Oklahoma law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

135.   The Individual Defendants are, or were, employees of the Watonga Police Department who acted within the scope of their employment in committing the misconduct described above.

136.   The City of Watonga is liable to indemnify any compensatory judgment awarded against the Defendant Officers.

WHEREFORE, Plaintiff Julia Cosby respectfully requests that this Court enter judgment in her favor and against Defendants, awarding compensatory damages, punitive damages, costs, and attorneys' fees, and interest, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff Corey Atchison hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: August 9th, 2021

RESPECTFULLY SUBMITTED:

/s/

Joseph Norwood
Norwood Law Firm P.C.
Council Oak Center
1717 S. Cheyenne Ave.
Tulsa, OK 74119
Phone & Fax: (918) 582-6464
joe@norwoodlegal.com
Attorney for Plaintiff Julia Cosby